UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | SA-22-CR-579-XR |
| | § | |
| MOISES JAEKOB VARGAS | § | |

**DEFENDANT'S SENTENCING MEMORANDUM**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE XAVIER RODRIGUEZ:

COMES NOW Defendant Moises Jaekob Vargas, and respectfully submits this Sentencing Memorandum, outlining "other matters relating to an appropriate sentence", pursuant to Rule 32(i)(1)(C), and (i)(4)(A)(i) of the Federal Rules of Criminal Procedure.

**I.   INTRODUCTION**

In this Memorandum, Counsel outlines several reasons in favor of sentencing Mr. Vargas to a range of punishment of no more than 36 months. The guideline range in this case is 121-151 months according to the PSI Report, (p. 18, para. 81).

**II.   LACK OF CRIMINAL HISTORY**

Jaekob has exactly one prior conviction on his record for crashing his friend's car into a building and then running away scared. (PSI Report – p. 7-8, para. 38). He served a 4-day jail sentence, and was released after agreeing to accept an offer of "time served" on the case. (PSI Report – p. 7, para. 37).

The only other non-juvenile charge he had was for an assault case that was dismissed. (PSI Report – p. 7-8, para. 38). The Report indicates that there was evidence of "mutual combat" when they arrived to conduct their investigation. (PSI Report – p. 8, para. 41). The alleged victim was a "Tyrone Waldo Floyd." (PSI Report – p. 8, para. 41). Jaekob contends that he was

1

actually the victim of this assault, and in fact filed his own assault charges against Tyrone subsequently. (Exhibit 1 & 2). Those charges appear to have been dismissed because in one case Jaekob filed a non-prosecution affidavit, and in the other case was considered a "missing witness" due to his federal incarceration. (Exhibits 1 & 2).

### III.  18 U.S.C. 3553 FACTORS FOR THE COURT TO CONSIDER

If these factors are carefully examined and applied to the Defendant's case, Counsel argues that a sentence of 36 months is more than adequate and "no greater than necessary" to accomplish the goals of sentencing. *See* 18 U.S.C. §3553(a) (emphasizing that court should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of the sentencing guidelines).

> A.   **THE NATURE AND CIRCUMSTANCES OF THE OFFENSE, AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT**

   1.   **General Offense Characteristics**

As the Indictment in this case indicates, Mr. Vargas was involved in the possession of child pornography. (ECF Doc. 1). Although he was not officially charged in the indictment with distribution, he has conceded in the Plea Agreement that he did so. Despite the repugnant nature of these activities, it is important to keep in perspective that this offense is still a non-violent crime, absent any evidence that he had a part in the creation of the picture or videos at issue. It is also important to consider the factors that drove him to commit such heinous acts.

The main reason he became involved in possession and distribution of these materials was that he was able to exchange them for the drugs he became addicted too – namely methamphetamine. His addiction to methamphetamine didn't start until age 31, and that is when his life fell apart and he turned into a totally different person. (PSI Report – p. 10, para. 50). Jaekob explains how he came to be in the position in the attached letter for the Court. (Exhibit 3).

As the Court is keenly aware, methamphetamine is an extremely addictive and destructive drug.  According to the Centers for Disease Control's website, "Methamphetamine is a highly addictive central nervous system stimulant. Methamphetamine use is associated with a range of health harms, including psychosis and other mental disorders."  (See [Patterns and Characteristics of Methamphetamine Use Among Adults — United States, 2015–2018 | MMWR (cdc.gov)](#)).  Notably, Jaekob was recently diagnosed with "manic bi-polar disorder".

Addiction to methamphetamine can take over a person's life to the point where their entire focus is on how to obtain the drug to support their daily habit.  That is why the penalties for its possession and distribution are also appropriately so severe.  Although Jaekob is the perpetrator in this instant case, he is also the victim of the person who first got him hooked on the drugs that led him to commit his crime.

While being addicted to drugs is not an official legal defense, it is certainly a factor the court can take into consideration under 18 U.S.C. 3353(b)(1) ("mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.").

According to the PSI Report, Jaekob has never had the chance to participate in any official drug rehabilitation programs.  Accordingly, Counsel would request that the court recommend the 500-hour drug treatment program for him.

**2.       Specific Offender Characteristics**

The PSI Report provides a brief overview of Mr. Vargas's life.  It reveals some serious struggles he had to deal with, like being placed in a homeless shelter for awhile.  (PSI Report – p. 9, para. 45).  However, there is one section in particular that bears some further scrutiny:

"The defendant advised he was physically abused by his father due to the defendant's

sexuality, specifically, advising he was thrown into a trash can on one occasion. The defendant also disclosed being sexually assaulted by a paternal uncle. At age 18, the defendant left his family's home to reside with his romantic partner for approximately nine years before his partner (Keith) passed [away]."

(PSI Report – p. 9, para. 45).

Jaekob has provided more details of his past struggles in more detail in the attached Exhibit 3.

    **B.**    **THE NEED FOR A SENTENCE TO REFLECT THE BASIC AIMS OF SENTENCING**

According to 18 U.S.C. 3553, the Court should impose a sentence that reflects the basic aims of society. The most basic aim of our society is to make sure the punishment assessed against a Defendant fits the Defendant's crime.

    **1.**    **"TO REFLECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE JUST PUNISHMENT"**

    **a.**    **"To Reflect the Seriousness of the Offense"**

The first of the official factors outlined in 18 U.S.C. 3553(a)(2)(A) calls for a punishment that "reflects the seriousness of the offense." Accordingly, the more serious the crime, the more severe the punishment should be. Applying that standard, a sentence of 36 months in federal prison is undoubtedly an extremely serious sentence for a non-violent crime. A sentence of 36 months is also more than adequate when viewed in the larger context of *Booker's* standard of a sentence "no greater than necessary" to achieve a just sentence.

    **b.**    **"To Promote Respect for the Law"**

Not only is a sentence of 36 months in prison a very serious punishment, it is also more than sufficient to promote respect for the law. The prospect of spending this much time in jail

should be more than enough to deter any rational person from ever engaging in this type of conduct again. To the degree that criminals actually think about the potential jail sentences before committing a crime, 3 years should be enough to stop anyone dead in their tracks. There is no solid empirical evidence that keeping Mr. Vargas in jail for longer than that would result in any meaningful statistical difference in his potential recidivism rate.

      c.     **"To Provide Just Punishment"**

The last of the 3553(a)(2)(A) factors direct the Court to assess a "just punishment". In considering this factor, it is again important to distinguish between the conduct of the person who took the illegal photographs and videos, and the person who viewed and distributed them. Clearly the creator of such pictures and videos is the one causing direct harm to the child victims. A person like Jaekob is presumed to cause harm under the theory that the more people view these types of images, the more incentive there is for other people to create them. However, there is an alternate theory that so much of this material has already been created that there is no compelling need to create any such new materials by those engaged in its production.

As noted in the PSI Report, it appears that none of the victims have been specifically identified or contacted in this case, so it is difficult to quantify the actual harm caused in this case. (PSI Report – p. 5-6, para. 16-18). As the Report correctly notes:

> "Most of the children found in these types of images are never identified. Although children depicted in these images have not been personally contacted (in fact some may now be adults), that does not imply viewing child pornography is a victimless crime. The children depicted in these images are victimized in multiple ways, once at the time the picture was produced/act committed and again each time it is viewed. The effects to these children are potentially devastating and can last a lifetime."

5

(PSI Report – p. 5-6, para. 16).

That being said, as the Court considers the potential harm that Vargas himself personally caused through the viewing and distribution of these pictures and videos, it should still be cognizant of the vast significant distinction drawn the creator of the materials, and the subsequent sharing of their contents with other people.

Bearing these principles in mind, Counsel argues that a 36 month sentence is sufficiently harsh to punish Vargas for the potential harm he caused to the unknown victims in this case.

## 2.     "DETERRENCE" THEORY

In regard to the "deterrence" theory, it is impossible to predict what degree of punishment will be sufficient to prevent a specific defendant from engaging in future wrongdoing. Some defendants will learn their lesson quickly with the proverbial "slap on the wrist." Some need more than a slap on the wrist. They actually need a short period of time in jail to see how it really feels to lose their liberty and be separated from their family and friends. Others can handle a few years away at a time, especially when they are relatively young. Others will become repeat offenders time and time again no matter how many prison sentences they are forced to endure.

Notably, this will be Mr. Vargas first experience with a lengthy prison sentence. As noted above, he was sentenced to a mere 4 days in a local county jail on his one and only conviction. The proposed 36-month sentence is 270 times more days in jail than that. To the degree that more prison time actually has a higher impact on reducing the recidivism rate, this increased percentage should be enough to accomplish said goal.

Jaekob has already had to face some serious challenges while in federal custody. At the end of last year, he lost his sister, Tracy Vargas. (Exhibits 4 & 5). Because of his incarceration,

he was not able to attend her funeral or properly say goodbye to her. This type of tragedy just makes his incarceration all the more harsh and increased the cost he is paying for the crimes he committed.

### 3. "INCAPACITATION" THEORY

Some defendants are such a danger to society that they need to be "incapacitated", by being placed in prison to prohibit them from having any contact with the general public where they can inflict further harm on society. That theory certainly applies to Mr. Vargas to some extent. However, he can be prevented from committing this type of crime again by placing extensive restrictions on his access to computers, cellphones, and other types of electronic data. These restrictions can be accomplished as part of his supervised release, and do not require incarceration to implement.

### 4. "REHABILITATION" THEORY

While assessing some prison time can be an essential element of the "rehabilitation process", it is only a small piece of the overall reform puzzle. Rehabilitation efforts that are case specific are much more critical to preventing any type of recidivism. In Jaekob's case, he needs extensive drug and sex offender treatment. To the degree that these treatments can be offered in prison, they should be offered to Jaekob. However, these treatments can also be provided to those on supervised release as well. Jaekob has already starting taking the necessary steps towards rehabilitation, as the attached education certificates indicate. (Exhibit 6).

### C.  THE SENTENCES LEGALLY AVAILABLE

The charge in Jaekob's case does not carry any mandatory minimum sentence. Therefore, the Court could theoretically sentence him to probation. Counsel is aware that such a sentence is highly unlikely, but would ask the Court to at least give some good-faith consideration to the

option, given Jaekob's lack of criminal history, and the fact that he has already spent 10 months in federal custody.  It is certainly conceivable that this sentence, along with extensive supervised release and related sex offender registration conditions can accomplish *Booker's* goal of being "no more than necessary" to accomplish the goals of sentencing."

### D.   THE GUIDELINES SENTENCE

Jaekob's guideline range in this case is 121-151 months.   However, for all the reasons stated above, Counsel argues that this sentence is much more lengthy than necessary to adequately punish Jaekob and accomplish the goals of sentencing.

### E.   ANY APPLICABLE SENTENCING COMMISSION POLICY STATEMENTS

There are no specific policy statements that particularly apply to Mr. Vargas's case.

### F.   THE NEED FOR RESTITUTION

The Plea Agreement states that the Defendant will be ordered to pay up to $5000 for each victim identified by the Government prior to sentencing.  (Plea Agreement – p. 11).  Counsel is not aware of any such identification at this time.  There is no mention of any restitution owed in the PSI Report.

The Government may also be seeking certain other monetary assessments against the Defendant.  (Plea Agreement – p. 12).  However, the Defendant remains indigent and unable to pay any such assessments.  In the event the Court does decide to assess any monetary penalty beyond the standard $100 special assessment fee, Counsel requests that the Court specify that no such assessments will be due and payable until after the Defendant is released from prison.  Specifying the due date in the Judgment & Commitment can help ensure that the Bureau of Prisons does not confiscate monies placed on the Defendant's account for his basic living supplies and/or phone call privileges.

### III. PRAYER

Bearing all these factors and principles in mind, Counsel would respectfully request that the Court assess a punishment of no more than 36 months in prison.

Respectfully submitted,

/s/
STEPHEN H. GORDON
*Attorney for Defendant*
The Gordon Law Firm., P.C.
5820 IH-10 West, Suite 400
San Antonio, Texas 78201
Ph: (210) 531-9700
Fx: (210) 732-0158
State Bar No. 24007252

### CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2023, a true copy of the foregoing Defendant's Sentencing Memorandum was transmitted to Assistant United States Attorney Tracy Thompson at the United States Attorney's Office, 601 N.W. Loop 410, Suite 600, San Antonio, Texas, 78216-5512, and to U.S. Probation Officer Vivian Friesenhahn, through the ECF system.

/s/
STEPHEN H. GORDON
*Attorney for Defendant*